**21-1897**

# United States Court of Appeals
### *for the*
# Fourth Circuit

FAUSTINO SANCHEZ CARRERA; JESUS DAVID MURO; MAGDALENO GERVACIO,

*Plaintiffs/Appellees,*

– v. –

E.M.D. SALES INC.; ELDA M. DEVARIE,

*Defendants/Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

# REPLY AND RESPONSE BRIEF OF APPELLANTS

EDUARDO S. GARCIA
JEFFREY M. SCHWABER
STEIN SPERLING BENNETT
DEJONG DRISCOLL PC
1101 Wootton Parkway
Suite 700
Rockville, Maryland 20852
(301) 340-2020
egarcia@steinsperling.com
jschwaber@steinsperling.com

*Counsel for Appellants*

CP  COUNSEL PRESS • VA – (804) 648-3664

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

SUMMARY OF THE ARGUMENT ..................................................1

ARGUMENT ..................................................................................3

    I.    THE EMPLOYEES' DEFENSE OF THE "CLEAR
        AND CONVINCING EVIDENCE" STANDARD IS
        INSUFFICIENT ..................................................................3

        A.    "Clear and Convincing Evidence" is Not Established
              Precedent in this Circuit ...............................................4

        B.    This Panel Has the Authority to Decide that "Clear and
              Convincing Evidence" Standard is Inapplicable ......................5

        C.    Employees' Exceedingly Narrow Reading of Encino
              Motorcars, LLC is Illogical .........................................6

    II.   THE DISTRICT COURT'S ERROR ON THE BURDEN
        OF PROOF WAS NOT HARMLESS .................................9

    III.  THE DISTRICT COURT ERRED ON ITS LEGAL
        ANALYSIS RELATING TO LIQUIDATED DAMAGES ..............15

        A.    The District Court Improperly Limited its Entire
              Analysis to Ms. Devarie's Personal Knowledge .....................16

        B.    EMD Does Not Allege that it Solely Relied on Advice
              from Accountants Regarding the FLSA ...............................19

        C.    Employees' Inaccurately Assert that the Establishment
              of a Collective Bargaining Agreement and Compliance
              with its Terms Adds Nothing to the Good Faith
              Calculus .................................................................20

        D.    EMD Disputes that it Was Aware of Any Complaints
              Relating to Overtime Pay .............................................24

        E.    The District Court's Determination that EMD was Not
              Willful Strengthens EMD's Good Faith Argument .................24

IV.   THE DISTRICT COURT DID NOT COMMIT AN ERROR
BY HOLDING THAT EMD DID NOT WILLFULLY
VIOLATE THE FLSA ............................................................25

    A.   The District Court is Entitled to Deference on its Fact-
Based Ruling ....................................................................26

    B.   The District Court Did Not Apply the Wrong Legal
Standard ...........................................................................27

    C.   The Evidence in the Record and Findings of the
District Court Do Not Support Willfulness .............................29

CONCLUSION ......................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*A.H. Phillips, Inc. v. Walling*,
324 US 490 (1945) ..................................................................................5

*Alvarez v. IBP*,
339 F.3d 894 (9t Cir. 2003) ..................................................................29

*Brinkley-Obu v. Hughes Training, Inc.*,
36 F.3d 336 (4th Cir. 1994) ..................................................................24

*Brooks v. Village of Ridgefield Park*,
185 F.3d 130 (3d Cir. 1999) ........................................................... 22, 23

*Calderon v. GEICO General Ins. Co.*,
809 F.3d 111 (4th Cir. 2015) ................................................................26

*Chao v. Self Pride, Inc.*,
232 Fed. App'x. 280 (4t Cir. 2007) ................................................. 28, 29

*Clark v. J.M. Benson Co.*,
789 F.2d 282 (4th Cir. 1986) ................................................................4, 5

*Davila v. Mendez*,
717 F.3d 1179 (11th Cir. 2013) ............................................................29

*Desmond v. PNGI Charles Town Gaming, L.L.C.*,
564 F.3d 688 (4th Cir. 2009) ................................................................4, 5

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018) ................................................................. *passim*

*Grogan v. Garner*,
498 U.S. 279 (1991) .................................................................................6

*Local 246 Util. WorkersUnion of Am. V. S. Cal Edison Co*,
83 F.3d 292 (9th Cir. 1996) ..................................................................20

*Martin v. Cooper Elec. Supply Co.*,
940 F.2d 896 (3d Cir. 1991) .................................................... 18, 22, 23

*Martin v. Deiriggi*,
985 F.2d 129 (4th Cir. 1993) ................................................................26

*McLauglin v. Richland Shoe Co.*,
    486 US 128 (1988) ........................................................................ 27, 28

*Morrison v. Cty. Of Fairfax, VA*,
    826 F.3d 758 (4th Cir. 2016) .................................................................5

*Payne v. Taslimi*,
    998 F.3d 648 (4th Cir. 2021) .................................................................6

*Reich v. S. New Eng. Telecomms. Corp.*,
    892 F. Supp. 389 (D. Conn. 1995) ................................................. 20, 21

*Reich v. S. New Eng. Telecomms. Corp.*,
    121 F.3d 58 (2d Cir. 2016) ...................................................................21

*Roy v. Cty. Of Lexington, S.C.*,
    141 F.3d 533 (4t Cir. 1998) .......................................................... 18, 25

*Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*,
    363 F.3d 299 (4th Cir. 2004) .................................................................4

*Shockley v. City of Newport News*,
    997 F.2d 18 (4th Cir. 1993) ...............................................................4, 5

*Williams v. Genex Servs., LLC*,
    809 F.3d 103 (4th Cir. 2015) .................................................................5

*Yi v. Sterling Collision Centers, Inc.*,
    480 F.3d 505 (7th Cir. 2007) .................................................................7

**Statutes & Other Authorities:**

29 U.S.C. § 216(b) ..................................................................................16

29 U.S.C. § 255(a) ..................................................................................27

Fed. R. Civ. P. 61 ....................................................................................9

## SUMMARY OF THE ARGUMENT

In support of Appellants/Cross-Appellees Elda M. Devarie ("Ms. Devarie") and EMD Sales, Inc.'s (collectively "EMD") Opening Brief of Appellants filed on February 15, 2022 ("EMD's Brief"), EMD maintains that the United States District Court for the District of Maryland's ("District Court") use of "clear and convincing evidence" as the standard by which an employer must establish that an employee qualifies for an exemption was incorrect as a matter of law. Appellees/Cross-Appellants Faustino Sanchez Carrera, Jesus David Muro and Magdaleno Gervacio (the "Employees") in their Opening-Response Brief of Appellees filed on April 7, 2022 ("Employees' Brief") continue to inaccurately assert that the "clear and convincing evidence" is established precedent in this Circuit. The Employees' Brief also attempts to usurp this Panel's authority however, this Panel may decide matters that are either not subject to binding precedent or where a relevant intervening Supreme Court decision has been issued. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) is undoubtedly an "intervening Supreme Court decision" that nullifies any justification that would have served as support for the "clear and convincing evidence" standard.

It is self-evident that the District Court's error harmed EMD. The District Court's rulings repeatedly referenced the "clear and convincing evidence" standard. During closing argument the District Court stated: "suppose the [District]

Court is of the view that it's actually a close question on liability, that you prevail on that issue, but barely. And largely as a result of how the law assigns burdens of proof." Given the repeated reliance on the "clear and convincing evidence" standard and the fact that the District Court stated that EMD met that heightened burden of proof in some instances, this Panel should not find the error to have been harmless.

In further support of EMD's Brief, EMD maintains that the District Court used the incorrect legal standard on the good faith analysis. The District Court improperly limited its entire good faith analysis to Ms. Devarie's personal knowledge. The District Court should have instead broadened its consideration to include the following: (i) EMD received advice from its accountants regarding the FLSA, (ii) the existence of a Collective Bargaining Agreement and compliance with its terms, (iii) EMD's position that there were no complaints relating to overtime pay and (iv) the impact that the finding of no willfulness has on the good faith analysis.

Moreover, EMD disputes that Employees are entitled to any relief on their Cross-Appeal and contends that the District Court correctly determined that EMD was not willful in its conduct. While Employees' ask this Panel to apply a *de novo* review of the District Court's decision on willfulness as a result of the fact-based analysis, this Panel owes deference to the trial courts on factual/credibility

findings. Even if this Panel were to review the legal standard applied by the District Court, it should conclude that the District Court applied the correct legal standard and that there was ample factual support in the record to substantiate the District Court's conclusion that EMD's conduct was not willful.

## ARGUMENT

## I. THE EMPLOYEES' DEFENSE OF THE "CLEAR AND CONVINCING EVIDENCE" STANDARD IS INSUFFICIENT.

None of Employees' passing attempts at defending the use of the "clear and convincing evidence" standard are persuasive. First, Employees' Brief continues the incorrect assumption that the "clear and convincing evidence" standard is established precedent in this Circuit. Employees do nothing to address the concerns relating to the undisputed language of the cases that were ultimately used as "precedent." Second, Employees improperly attempt to usurp this Panel's authority. This Panel may decide matters that are either not subject to binding precedent or where a relevant intervening Supreme Court decision has been issued. Third, Employees' final argument is the least persuasive because they simply ignore the impact of *Encino Motorcars, LLC*. Hence, this Panel should find that the District Court erred in applying a legal standard which either was never the applicable legal standard and/or which no longer is the applicable legal standard in light of the Supreme Court's ruling in *Encino Motorcars, LLC*.

A. "Clear and Convincing Evidence" is Not Established Precedent in this
Circuit.

Employees' Brief fails to address altogether the argument made in EMD's
Brief that this Court mistakenly followed unestablished precedent for years. *See*
Docket Entry No. 21 at Sec. I.A. At the core of EMD's argument is the simple
notion that *Shockley v. City of Newport News* did not establish the legal precedent
of "clear and convincing evidence" it merely stated: "[e]mployers must prove by
clear and convincing evidence that an employee qualifies for exemption." 997 F.2d
18, 21 (4th Cir. 1993). This Court's statement in *Shockley* contained no legal
analysis whatsoever regarding that burden and merely cited to *Clark v. J.M.
Benson Co.* 789 F.2d 282, 286 (4th Cir. 1986). As more fully stated in EMD's
Brief, *Shockley* only decided that the employer in a FLSA dispute bears the burden
to prove the applicability of the exemption and did *not* decide that a heightened
"clear and convincing evidence" standard should be applied. 789 F.2d at 286 (4th
Cir. 1986).

None of the additional cases cited by Employees can erase this history.  In
fact, each case cited by Employees relies on *Shockley* rather than *J.M. Benson Co.*
for the creation of the "clear and convincing evidence" standard.[1] It is likely that

---

[1] *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 691 n. 3 (4th
Cir. 2009) ("In *Shockley v. City of Newport News*, this Court unequivocally held
that the proper standard is clear and convincing evidence."); *Shaliehsabou v.
Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 311 (4th Cir. 2004) ("[M]ust

this inaccurate assertion of precedent was never thoroughly questioned because it was consistent with the prevailing sentiment against employers since 1945 when the Supreme Court stated: "[a]ny exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and intent of Congress." *A.H. Phillips, Inc. v. Walling*, 324 US 490, 493 (1945).

Regardless of the reason, the language of *Shockley* and *J.M. Benson Co.* make clear that this Court never made a conscious determination as to the use of the "clear and convincing evidence" standard, and instead, through a simple but undeniable misreading, perpetuated it

B. This Panel Has the Authority to Decide that "Clear and Convincing Evidence" Standard is Inapplicable.

In the event that this Panel concludes that the "clear and convincing evidence" standard is not the appropriate burden of proof for an exemption, it has authority to proceed. Put another way, if this Panel finds—as EMD argues—that no prior panel affirmatively decided the appropriateness of the "clear and convincing evidence" standard, then there is no precedent that binds it.

---

be proven by the employer by clear and convincing evidence. *Shockley v. City of Newport News*[.]"); *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) ("An employer must prove by clear and convincing evidence that an employee qualifies for exemption. *Shockley v. City of Newport News*[.]"); *Morrison v. Cty. Of Fairfax, VA*, 826 F.3d 758, 761 (4th Cir. 2016) (citing *Desmond* which in turn cites *Shockley* for the "clear and convincing evidence" standard).

Alternatively, the Supreme Court's decision in *Encino Motorcars, LLC* provides this Panel with the authority to overturn that precedent. This Circuit has stated:

> Of course, our own prudential decision follow prior panel decisions (horizontal stare decisis) is overcome by our mandate as an inferior court to follow the Supreme Court's commands (vertical stare decisis). Thus, we are not bound by previous panels where "the prior opinion has been overruled by an intervening opinion from the Supreme Court." … So where subsequent Supreme Court decisions "clearly undermine[]" a panel precedent, we need not follow that panel precedent.

*Payne v. Taslimi*, 998 F.3d 648, 655 n. 4 (4th Cir. 2021) (citations omitted). As detailed below and in EMD's Brief, *Encino Motorcars, LLC* "clearly undermine[s]" any rationale that could have formed the basis for the "clear and convincing evidence" standard.

C. Employees' Exceedingly Narrow Reading of *Encino Motorcars, LLC* is Illogical.

Just as previous Supreme Court precedent was not interpreted in a vacuum, *Encino Motorcars, LLC* cannot be viewed as a decision merely about statutory language and interpretation. There can be no dispute that the statutory text of the FLSA is silent as to the applicable burden associated with proving an exemption. The burden of proof is to be determined by the judicial system as it attempts to interpret the FLSA.

It is axiomatic that the default burden of proof in civil litigations is "preponderance of the evidence." *See Grogan v. Garner*, 498 U.S. 279, 286 (1991)

("Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'"). As such, something out of the ordinary must take place in order for the Court to deviate from that burden of proof and hold a litigant to a heightened standard.

Noticeably absent from Employees' Brief is any Supreme Court case that states that the burden of proof on the employer to prove the applicability of an exemption is "clear and convincing evidence." None were cited because none exist. Instead, for nearly eighty (80) years, litigants relied on the Supreme Court's language about "narrow construction" of the FLSA to allege rather ubiquitously that the employer should be held to a heightened standard.[2] That foundational principle for a heightened standard was affirmatively "**reject[ed]**" by *Encino Motorcars, LLC.* 138 S. Ct. at 1142 (emphasis added). In *Encino Motorcars, LLC*,

---

[2] Courts have not unanimously agreed with the interpretation that employers should be held to a heightened burden of proof. As stated in EMD's Brief, the Seventh Circuit Court of Appeals affirmatively rejected the "clear and convincing" standard stating "[t]he exemption from the FLSA's overtime provision, at issue in this case, curtails no greater individual interest or right than the right to a discharge in bankruptcy, at issue in *Grogan*, where the Supreme Court rejected a requirement that a creditor prove by clear and convincing evidence his entitlement to an exception to the debtor's right to a discharge." *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 507-08 (7th Cir. 2007).

as part of its rationale for striking down the age-old principle of "narrow construction" the Supreme Court cited the following:

> "[T]here is no reason to give [exemptions] anything other than a fair (rather than a 'narrow') interpretation." The narrow-construction principle relies on the flawed premise that the FLSA "pursues" its remedial purposes "at all costs." … But the FLSA has over two dozen exemptions in § 213(b) alone, including the one at issue here. Those exemptions are as much part of the FLSA's purpose as the overtime pay requirement. ... ("Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage"). We thus have no license to give exemptions anything but a fair reading.

138 S. Ct. at 1142 (citations omitted). By affirmatively rejecting the legal underpinning that gave rise to the only justification for the heightened evidentiary burden, the *Encino Motorcars, LLC* court made clear that the "clear and convincing evidence" standard is not the proper burden to place on employers in Maryland.[3]

---

[3] Employees' Brief provided no legal basis through which there would be a legal justification for continuing to hold employers to a heightened burden of proof. Instead, Employees focused on simply stating that this Panel should not "reject 28+ years of Fourth Circuit precedent" despite the fact that *Encino Motorcars, LLC* overturned precedent from nearly eighty (80) years ago. Employees also state that trial courts continue to apply the "clear and convincing evidence" standard after *Encino Motorcars, LLC*, which is simply irrelevant and Employees did not cite to any case in this Court that has been decided on this issue after *Encino Motorcars, LLC*.

## II.    THE DISTRICT COURT'S ERROR ON THE BURDEN OF PROOF WAS NOT HARMLESS.

The District Court was explicit that "clear and convincing evidence" standard was central to its decision. Thus, the District Court's error was not harmless. FRCP 61 enshrines the doctrine of harmless error stating:

> Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for grating a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

EMD does not dispute that it bears the burden of proving the impairment of "substantial right" and that justice requires disturbing the judgment of the District Court. However, the harm suffered by EMD in this case is self-evident from the Court's ruling and the facts.

First, the District Court expressly mentions the "clear and convincing evidence" standard six (6) separate times in its March 19, 2021 Memorandum Opinion. A 1602-06.  Undoubtedly that burden of proof was front and center of the District Court's mind. Second and most importantly, at no point does the District Court affirmatively state that even if the "preponderance of the evidence" had been applied,  EMD would lose. To the contrary, the District Court mused:

> The Court:    Suppose the Court is of the view that it's actually a close question on liability, that you prevail on that issue, but barely. **And largely as a result of how the law assigns burdens of proof**. That the picture as to what they

9

> actually do is pretty muddled, such that if Congress had placed the burden on you, you would have lost on liability.

A 1663 (emphasis added).

To prove the outside salesman exemption, EMD had to prove (1) that Employees made sales in their roles as sales representatives and (2) that making sales was Employees' primary duty. A 1602.

Even under the "clear and convincing evidence" standard, the District Court found that at least a portion of Employees' job was to make sales, stating:

> Upon consideration of the evidence in this case, the [District] Court finds that, although [EMD] established by clear and convincing evidence that Plaintiffs make sales at independent stores, [EMD] do not carry the same burden with respect to whether [Employees] make their own sales at chain stores. … Based on all this evidence, the [District] Court finds that [EMD] have demonstrated that there is a *possibility*—but not clear and convincing evidence—that sales representatives can make their own sales at chain stores.

A 1604-05. In the above analysis the District Court also concluded that while EMD did not meet its "clear and convincing evidence" standard, there was a *possibility* that the Employees made sales at chain stores. At this stage, there is no way to know whether the District Court's finding of a *possibility* would be above the threshold for "preponderance of the evidence."[4]  In fact, the clear insinuation is to the contrary.

---

[4] Employees' Brief cited two (2) cases for the notion that "possibility does not even meet the preponderance of the evidence standard." However, there is simply no

On the issue of primary duty, the District Court only concluded that EMD did not meet its burden under the "clear and convincing evidence" standard, although it may have met the standard for independent stores and for its other sales representatives stating:

> At independent stores, the [District] Court finds that, although making sales could theoretically be the primary duty of some sales representatives, [EMD] did not demonstrate by clear and convincing evidence that it is [Employees'] primary duty. In any event, based on [Employees'] testimony, the [District] Court finds that they spend or spent the bulk of their time at chain stores. Accordingly, even if [EMD] had proven by clear and convincing evidence that making sales is [Employees'] primary duty at independent stores, this would not suffice to establish that [Employees'] *overall* primary duty as EMD sales representatives is to make sales.

A1605-06. Similar to the previous element, there is no definitive guidance at this stage as to how the District Court would have resolved this matter if it applied the "preponderance of the evidence" standard.

 Employees' Brief intentionally misstates that "[EMD] 'conceded' that [Employees] could not sell new products at chain stores, because such sales were made at the corporate level." To the contrary, in EMD's Brief there was ample evidence from three (3) of EMD's employees that substantially supported EMD's position that even at chain stores the sales representatives did have the ability to

---

legal definition or fixed standard that can be ascribed to a *possibility* and the burden of proof that does or does not meet. Simply put, the only person that can determine whether a *possibility* is sufficient under a "preponderance of the evidence" standard in this matter is the Honorable James K. Bredar.

sell and that was EMD's expectation. *See* EMD's Brief at Sec. II.D. Additionally, the testimony from the representatives at the chain stores—Ms. Cynthia Volk, Mr. Christopher Krawchuk and Mr. Jigsa Eshete—was not definitive.  In fact, all three of those witnesses confirmed that there was no certainty of the planograms being followed strictly and no adverse consequence for the store managers if there was deviation. Ms. Volk testified as follows regarding the purported strict adherence to the planograms on cross-examination:

> Q:    And I take it, since you don't know who the managers are, you've  never had any discussions with those managers as to whether or not they fully comply with your preference that people follow your plans as far as planograms; is that correct?

> A:    Correct. To my knowledge, I would not have had one-on-one discussions.

> Q:    So if any of those managers were to deviate from the corporate plan that you've devised, you have no way of knowing whether or not they did; correct?

> A:    They did not directly notify me, no.

>                   ***

> Q:    Did you know of any store manager while you were working as a category manager at Giant that was ever disciplined or threatened with discipline for not following the planogram policy as you set forth?

> A:    No, not to my knowledge.

A 1710-12. Mr. Krawchuck when answering the [District] Courts questions acknowledged as follows:

| | |
|---|---|
| The Court: | The stores – the store manager is supposed to call the salesperson as the first sort of line or strategy of how to deal with a product. |
| The Witness: | Yes, Your Honor. They should have a relationship with their vendors, yes. |
| The Court: | Okay. Did they do that? You said they should do that, did they do that? |
| The Witness: | I'm sure that the vast majority did, yes. |
| The Court: | You're sure that the vast majority did call their salesperson? |
| The Witness: | Yes, that was the protocol, sir. |

\*\*\*

| | |
|---|---|
| The Court: | Do vendors try to get you to change the planogram, come in and say, hey, come on, this isn't fair. |
| The Witness: | All the time. |
| The Court: | And, you know, we proved it to you. We proved it to you last month, we proved it to you last season at this time, this stuff moves and you've got a great margin on it. |
| The Witness: | That's exactly right. |

\*\*\*

| | |
|---|---|
| The Court: | And then did you or someone who works for you or with you go to the stores and audit the compliance with the planogram? |
| The Witness: | We did not audit. |

13

A 1716-18. Additionally, in response to further questioning, Mr. Krawchuck also

stated as follows:

> Q:   Okay. So is it true that store manager has the flexibility to make determinations for unallocated, nonplanogramed shippers and other displays at Safeway?
>
> A:   Yes.
>
> Q:   Okay. And there's empty floor space in some Safeway stores that a store manager can allocate product to?
>
> A:   Sometimes, not a lot of times, but yes.
>
> ***
>
> Q:   Okay. Now, when they have seasonal displays, isn't it true that the store manager has discretion to order additional products that are selling well at the store?
>
> A:   They can order, yes.
>
> ***
>
> Q:   Okay. So when you say it's an unauthorized display, you mean it's unauthorized under the planogram; correct?
>
> A:   No, unauthorized display would be outside of the planogram.
>
> Q:   Okay. But the store manager must have had – I would assume would have had some say in putting it in; correct?
>
> A:   Some managers are better than others. I – there's – unfortunately, there's a lot of gray area there.

A1719-21. While Mr. Eshete was stricter about his specific practice as it pertained to Wal-Mart, he did acknowledge that vendors do nevertheless attempt to get more space despite Wal-Mart's strict planogram policies:

> Q:    Now have there been occasions where Mr. Sanchez Carrera has solicited you for additional space around the Wal-Mart store to put Iberia products on?
>
> A:    No, a lot of vendors they always ask for space, I always give them the right, the first statement is like I am not allowed or I'm not permitted to give extra space for any vendors, it has to go through the home office.

A 1725.

Hence, the District Court's incorrect decision on the appropriate burden of proof was harmful given the District Court's assertion about the closeness of the decision, the ambiguity of its ruling as to whether or not EMD would have met the "preponderance of the evidence" standard and the contested evidence on the duty of the Employees. This Panel does not have to strain any interpretation of the District Court's decision in order to determine that a different result may have been realized by EMD if the appropriate and lower burden of proof were applied in this case.

## III.   THE DISTRICT COURT ERRED ON ITS LEGAL ANALYSIS RELATING TO LIQUIDATED DAMAGES.

The District Court improperly limited its entire analysis to Ms. Devarie's personal knowledge. The District Court should have considered the advice that

EMD received from its accountants regarding the FLSA, the existence of a Collective Bargaining Agreement and compliance with its terms, EMD's position that there were no complaints relating to overtime pay and the impact that the finding of no willfulness has on the good faith analysis.

A. The District Court Improperly Limited its Entire Analysis to Ms. Devarie's Personal Knowledge.

Employees' Brief attempts to excuse the District Court's use of an incorrect legal standard (solely focusing on Ms. Devarie's knowledge) by misconstruing the District Court's words and arguing that the District Court applied a different legal standard (focused on "Appellants' collective failure"). Employees' argument is defeated by the express language of the District Court's Orders.

Employees argue that the District Court was focused on EMD as a whole instead of just Ms. Devarie's personal knowledge which EMD agrees would be in line with the case law. The Court's March 19, 2021 Memorandum Opinion stated:

> Defendants' failure to investigate the actual daily tasks of sales representatives, however, is dispositive to finding that Defendants acted in good faith or had reasonable grounds to believe that they were in compliance with the FLSA. The Court determined that Ms. Devarie's testimony regarding sales representatives' duties was aspirational in nature and revealed her lack of knowledge as to what sales representatives' daily responsibilities actually entail. Without having a concrete sense of Plaintiffs' daily schedules, Defendants could not have objectively reasonable grounds for believing that sales representatives are covered by the FLSA's outside sales exemption. … Accordingly, Plaintiffs are entitled to an award of liquidated damages under 29 U.S.C. § 216 (b).

16

A 1607-08. To the arguable extent the above language is somewhat ambiguous as to whether the District Court was focusing on EMD as a whole or instead solely on Ms. Devarie's personal knowledge, the Memorandum Opinion denying the Motion to Alter or Amend Judgment was explicit that Ms. Devarie's personal knowledge was the start and end of the analysis, stating:

> Defendants cite no authority for the proposition that an employer can be found to have acted in good faith or had objectively reasonable grounds for belief that **her** conduct complied with he FLSA where **she** did not have actual knowledge of her employees' responsibilities.

A 1807 (emphasis added). The District Court then went on to specifically admonish Ms. Devarie's perceived lack of personal knowledge, stating:

> Further, Defendants do not establish that the Court's conclusion that Ms. Devarie did not know the actual job responsibilities of sales representatives was based on any misapprehension of fact. … Defendants argue that Ms. Devarie knew the actual job responsibilities of sales representatives because she was EMD's first sales representative and because her trial testimony established that the mission of sales representatives at EMD is to sell. (*Id.* at 4) Defendants do not explain how Ms. Devarie's knowledge of her own role when she founded EMD in 1995 would inform her as to the responsibilities of the thirty-five sales representatives now employed by EMD more than twenty-five years later. Indeed, as Ms. Devarie testified at trial, EMD did not even begin servicing chain stores until 1997. … Additionally, the Court pointed out in its March 19 Memorandum Opinion, Ms. Devarie's testimony regarding the *mission* of sales representatives was largely aspirational in nature and did not establish the *actual* responsibilities of sales representatives.

A 1807. Given the express language and context from the District Court's ruling it appears beyond dispute that the District Court's liquidated damages analysis

17

solely—and improperly—focused on Ms. Devarie's personal knowledge rather than the "collective" acts of EMD as Employees attempt to allege. Employees' Brief fails to cite a single case with analogous facts and with a holding, as the District Court suggested, that EMD cannot be found to have acted in good faith or had objectively reasonable grounds "where [Ms. Devarie] did not have actual knowledge of her employees' responsibilities."[5]

Employees' Brief generally cites four (4) cases from district courts, two (2) cases from circuit courts and *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896 (3d Cir. 1991) for the proposition that investigation into the duties of the employees is essential to a liquidated damages analysis. All of those cases have been affirmatively distinguished in EMD's Brief and there is a dramatic difference between the conduct of the employers cited in Employees' cases and the conduct of EMD. *See* EMD's Brief at Sec. II.B. As detailed in EMD's Brief, among other things, EMD sought guidance from two (2) accountants, engaged in arms-length negotiations with a union that represented *Employees'* interests and retained a big law firm (Whiteford Taylor Preston) to represent them in the negotiations for the Sales Representatives. These facts in their totality should be considered when

---

[5] As a general matter, courts should not be affirmatively seeking a path for awarding liquidated damages but should instead weigh all of the evidence since "[l]iquidated damages 'are considered compensatory rather than punitive in nature." *Roy v. Cty. Of Lexington, S.C.*, 141 F.3d 533, 548 (4t Cir. 1998) (citations omitted).

determining whether liquidated damages should be awarded and not summarily

discarded due to a lack of perfect personal knowledge by the owner of the business

as to the specific responsibilities of each employee.

Further, Employees' Brief is silent as to what the minimum level of

knowledge a CEO and/or owner of a business must meet in order for the good faith

and reasonable grounds analysis  even to begin. EMD maintains that the level of

personal knowledge exhibited by Ms. Devarie meets any minimum level of

knowledge that would be required, should this Panel find it necessary to enact such

a requirement.

B. EMD Does Not Allege that it Solely Relied on Advice from Accountants Regarding the FLSA.

Employees seek to discount the undisputed fact that Ms. Devarie received

and complied with advice from two (2) accountants relating to the FLSA.

Employees' Brief alleges that Ms. Devarie was blissfully ignorant because she did

not receive written advice from her accountants and because they did not

specifically opine as to the "outside sales exemption." EMD has never sought to

solely rely on the advice that Ms. Devarie received from the two (2) accountants as

the basis for why liquidated damages should not be awarded. *See* EMD's Brief at

II.D.a.iii. To the contrary, EMD has always maintained that the receipt and

compliance with the advice from the two (2) accountants was consistent with

EMD's conduct throughout its business operations wherein it sought the advice

and counsel of experienced legal and accounting professionals in order to ensure that EMD was complying with all relevant laws, including the FLSA.

C. Employees' Inaccurately Assert that the Establishment of a Collective Bargaining Agreement and Compliance with its Terms Adds Nothing to the Good Faith Calculus.

The establishment of a Collective Bargaining Agreement—that was negotiated at arms-length—and compliance with its terms is significantly relevant to the good faith calculus that the District Court should have undertaken. Employees misstate the law by alleging that "memorializing unlawful pay practices in a CBA adds nothing to the good faith calculus." To support that assertion, Employees cite two (2) cases, neither of twhich stands for their suggested broad and unyielding principle. Employees' Brief is misleading as to the ruling in *Local 246 Util. Workers Union of Am. V. S. Cal Edison Co* because the Ninth Circuit Court of Appeals made no decision as to the liquidated damages analysis instead it stated "[b]ecause the good faith defense of Section 260 includes subjective as well as objective elements, it would be inappropriate for this court to rule on the defense in the first instance. … Accordingly, we leave the liquidated damages issue to the district court on remand." 83 F.3d 292, 298 (9th Cir. 1996). In *Reich v. Southern New England Telecom Group*, there appeared to have been evidence of "bad faith" on the part of the employer that affected the district court's

decision in a dispute regarding compensation for lunch time periods, since the

district court stated:

> Here, [the employer] failed to meet this burden. As the evidence
> demonstrated, [the employer] had a longstanding policy not only
> requiring its outside craft employees to remain on the job sites and
> perform substantial duties during their lunch periods, but of
> threatening, and in some cases imposing, discipline on those
> employees who violated the policy. It is not objectively reasonable, in
> light of the facts developed in this matter, for [the employer] to fail to
> compensate the outside craft employees for the work they perform
> during their lunch periods. Nor can it be said that [the employer's]
> actions were prompted by good faith. Accordingly, liquidated
> damages in an amount equal to the back overtime pay shall be
> awarded to the plaintiff.

892 F. Supp. 389, 405 (D. Conn. 1995). The Circuit Court in *Reich* focused on the

employers' arguments that it "did not purposefully violate the provision of the

FLSA," that there was an "absence of complaints on the part of the employees"

and the allegation of "conformity with industry-wide practices" in its analysis of

why the district court's ruling should be affirmed. 121 F.3d 58, 71 (2d Cir. 2016).

The Circuit Court in *Reich* was silent as to the impact of the existence of the

collective bargaining agreement on the liquidated damages analysis. Hence, neither

of the cases cited by Employees should persuade this Panel to summarily disregard

the impact on the good faith calculus of EMD's entry into, and compliance with, a

Collective Bargaining Agreement that was negotiated at arms-length.

    As detailed more fully in EMD's Brief, (i) EMD was at all times transparent

with the Union about the business, (ii) EMD retained a respected law firm

(Whiteford Taylor Preston) to represent it in the negotiations for the Sales Representatives, (iii) EMD complied with the terms of the Collective Bargaining Agreement, (iv) there is language in the record about the Union's active role in the negotiations and (v) the Union asserted a "hands-on sense of what issue exist." *See* EMD's Brief at Sec. II.D.a.ii. All of these facts show a level of publicity and good faith that should be encouraged and not disregarded as irrelevant.

Employees' efforts to distinguish the case law cited by EMD is not only insufficient but shows the importance of a fact-based analysis rather than a "one size fits all" approach. These cases all show that mistakes happen no matter the best efforts of parties at times and that the existence of a Collective Bargaining Agreement can weigh against an award of liquidated damages. In addition to the unavailing efforts to distinguish the cases cited by EMD, Employees seek to read *Brooks v. Village of Ridgefield Park* in an exceedingly narrow fashion.[6] The Third Circuit Court of Appeals in *Brooks,* applying nearly identical facts, found that reliance on an attorney through a collective bargaining process could be reasonable and in good faith under the appropriate circumstances, finding:

> The [employer] argues that it made a good faith effort to comply with the FLSA by taking affirmative steps to meet its obligations under the Act. The [employer] noted that it, as well as the [union], retained experienced labor cousnel and relied on counsels' advice during the collective bargaining negotiations. It reasonably expected of counsel

---

[6] In EMD's Brief, *Brooks* was also cited to challenge Employees' overstated holding of *Martin v. Cooper Elec. Supply Co. See* EMD's Brief at Sec. II.B.

that the terms and conditions negotiated by them in good faith complied with the law. In rejecting the [employer's] defense that it acted reasonably and in good faith, the district court reluctantly concluded that our decision in *Martin* precluded such a defense. **We do not agree.**

\*\*\*

The anomaly of this litigation is highlighted by an analysis of the [employer's] good faith argument. The essence of this lawsuit arises out of the plaintiffs' persistent request over many years that their overtime be paid separately and accumulated. The employer now is being sued by the plaintiffs for having complied with their request made through their exclusive bargaining agent, the [union], during the course of collective bargaining. Under the Labor Relations Act, collective bargaining is required to be conducted in good faith. Instituting this litigation by the plaintiffs suggests, therefore, that the plaintiffs did not bargain in good faith. In no time during the negotiation of successive collective bargaining contracts did the employees or their Union raise any objection to the deferred payment of overtime or its legality. Because the deferment of overtime originated with the plaintiffs and their Union, it is understandable that the [employer] had no reason to believe that the overtime pay could not be legally delayed.

\*\*\*

[T]he court made no findings of fact on the issue. We believe that neither *Martin* nor any of our precedents preclude the district court in the circumstances of this case from determining whether the [employer] acted reasonably and in good faith in complying with the request of their employees.

185 F.3d 130, 137-40 (3d Cir. 1999). EMD acted similar to the employer in *Brooks* by relying on Whiteford Taylor Preston's knowledge of the FLSA as well as all appropriate laws and on the request of the Sales Representatives/Union that "[t]he parties recognize that these employees are compensated on a commission basis …

23

and **set their own hours**," with no expectation of overtime. A 1699 &1682 (emphasis added).

    D. <u>EMD Disputes that it Was Aware of Any Complaints Relating to Overtime Pay</u>.

This Panel should give no dispositive weight at this stage to Employees' assertion that complaints regarding compensation were made to EMD, since it is a disputed issue and nowhere in the trial record is there any finding in that regard. In EMD's Brief Ms. Devarie vehemently denied that she ever was made aware of any such complaints and instead stated that Employees were told of their exempt status at the start of their employment and that no objection was made at that time

    E. <u>The District Court's Determination that EMD was Not Willful Strengthens EMD's Good Faith Argument</u>.

Employees would like this Panel to discount the District Court's finding that EMD was not willful as part of the liquidated damages analysis, but although the denial of willfulness is not automatic/dispositive it is certainly relevant. As stated in EMD's Brief, counsel for Employees acknowledged the relevance of the willfulness analysis during closing arguments stating: "[s]o I just want to say a little bit about the law in the 4th Circuit on willful and good faith, they are intertwined." A 1659. That is consistent with the relevant legal authority on this subject. *See Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994) ("a finding of non-willful can provide an objective basis on which a judge

could premise a finding of good faith."); *Roy*, 141 F.3d at 548 ("We credit [the finding that the employer's conduct was not willful] as evidence of the [employer's] good faith."). The District Court on remand can look at its own fact-based ruling on willfulness for guidance on the liquidated analysis to find in favor of EMD.

## IV.   THE DISTRICT COURT DID NOT COMMIT AN ERROR BY HOLDING THAT EMD DID NOT WILLFULLY VIOLATE THE FLSA.

The District Court did not err by holding that EMD's actions were not willful violations of the FLSA, and Employees' arguments to the contrary are not persuasive. It was the Employees' burden to prove willfulness. The District Court concluded that the facts simply did not support such a finding:

> "[Employees] do not demonstrate that such failure rose to the level of knowledge or reckless disregard such that [EMD's] FLSA violation was willful. *See Desmond*, 630 F. 3d at 358. The Court reaches this finding after careful consideration of the full trial record, and especially the testimony of Ms. Devarie, who was impermissibly but credibly uninformed on the topic of how the FLSA applied to her business. Her error was one of neglect, not recklessness or willful misbehavior.

A 1608-09. This Panel owes deference to the trial courts on the factual/credibility findings, the District Court applied the correct legal standard and there was ample factual support in the record to support the District Court's conclusion.

A. <u>The District Court is Entitled to Deference on its Fact-Based Ruling</u>.

Employees knowingly misstate the applicable standard of review in an effort to obtain a *de novo* review and avoid the deference that is due to the District Court on its ruling. In Employees' Memorandum in Opposition to [EMD's] Motion for Summary Judgment and In Support of [Employees'] Cross-Motion for Partial Summary Judgment, Employees stated as follows: "[t]he question of whether an employer acted willfully is generally a question of fact. … The burden to establish willfulness rests with the employee." A 106. The District Court agreed with Employees' position at that time and stated "[t]he issue of willfulness is typically a question of fact." A 156. This is consistent with precedent of this Court. *See Calderon v. GEICO General Ins. Co.*, 809 F.3d 111, 130 (4th Cir. 2015). In *Martin v. Deiriggi*, where the District Court found that the violations were willful—and the standard would be the same in the inverse situation where a finding against willfulness was made—this Court stated:

> The district court's conclusion that the [employer's] violations of the FLSA were willful is a finding of fact, not to be disturbed by this Court unless **clearly erroneous**. Where, as here, findings are tied closely to a trial court's witness credibility determinations, appellate courts give great deference to the trial court's factual findings.

985 F.2d 129, 136 (4th Cir. 1993) (emphasis added). The District Court's ruling expressly made a credibility determination when it found that Ms. Devarie was "credibly uninformed on the topic of how the FLSA applied to her business." A

1608. As such, the District Court's ruling against willfulness is entitled to "great deference."

B. The District Court Did Not Apply the Wrong Legal Standard.

Employees have failed to demonstrate that they met their burden on willfulness under the clearly erroneous standard and the allegation that the District Court applied the incorrect legal standard is a distraction. The question of willfulness is enshrined in the FLSA with regard to the statute of limitations wherein it states that "every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]" 29 U.S.C. § 255(a).

As cited by the District Court, the seminal case on the willfulness issue is *McLauglin v. Richland Shoe Co.* 486 US 128 (1988). In *Richland Shoe*, the Supreme Court analyzed the legislative history behind the FLSA's statute of limitations provision and recognized "[t]he fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw **a significant distinction** between ordinary violations and willful violations." *Id.* at 132 (emphasis added). The Supreme Court then declined to apply a standard "that merely requires that an employer knew that the FLSA 'was in the picture'" because

it "virtually obliterates any distinction between willful and nonwillful violations." *Id.* at 132-33. Instead, the Supreme Court opted for a standard that required the employee prove "that the employer either knew or showed reckless disregard for the matter or whether its conduct was prohibited by the statute[.]" *Id.* at 133. The standard set forth by the Supreme Court on willfulness has remained unchanged since 1988 and was the standard applied by the District Court.

Employees have read *Chao v. Self Pride, Inc.* exceedingly narrowly. 232 Fed. App'x. 280 (4t Cir. 2007). In *Chao*, not only did the district court hold—and this Court affirm—that the employer's conduct was not willful, but it also made that finding despite the fact that the Department of Labor had previously informed the employer that it was violating the FLSA, and the employer did not change its conduct. *Id.* at 286-87. In its analysis, this Court stated:

> The evidence at trial showed that an investigator from the Department of Labor arrived at [the employer] in August 1998 and on September 30, 1998, told Barbara and Jerome Robinson that [the employer's] policy on paying for breaks **violated the FLSA**. At that time, Barbara and Jerome Robinson expressed disagreement with the investigator's conclusion, stating that they believed that the breaks need not be paid. There was a follow-up call, seven months later, to the same effect. At no point did the investigator discuss which provisions of law might have been violated, nor did he provide any examples of violations. The investigator also did not explain how the violations he was claiming might have been corrected. [The employer] had no further dealings with the Department of Labor until another investigator arrived some two and one-half years later, in September 2001, leading to the claims in this case.

28

> The district court found as a matter of fact that the Secretary had failed to demonstrate that defendants had *notice* of the requirements of the FLSA at the time of the alleged violations. In the district court's view, such notice was a prerequisite to finding of either a reckless disregard of a violation or a knowing violation of the FLSA. …We read the recklessness requirement as the district court did—as requiring notice, actual or constructive—of the existence and general requirements of the FLSA.

*Id*. The ruling in *Chao* is entirely consistent with *Richland Shoe Co.* since it is clear that a willful violation should be the exception to the rule and not the default position in FLSA disputes.[7] *See also Desmond*, 630 F.3d at 358 ("Negligent conduct is insufficient to show willfulness").

### C. The Evidence in the Record and Findings of the District Court Do Not Support Willfulness.

There is ample factual support in the record and in the District Court's findings that EMD's conduct was significantly less intentional and/or reckless than the conduct of the employer in *Chao* which similarly was found to not rise to

---

[7] The other out of jurisdiction cases cited by Employees do not change the above stated legal standards or give further meaningful guidance for this Panel because they are readily distinguishable. In *Alvarez v. IBP*, there was an abundance of notice regarding the violations of the FLSA prior to the lawsuit where willfulness was found, since the employer had been involved in a "[long-running litigation between [the employer] and the United States Department of Labor … [and] [i]n the course of that litigation, damage and wage issues comparable to those raised in this case were decided[.]" 339 F.3d 894, 899 (9t Cir. 2003). Even when finding willfulness in *Alvarez*, the Ninth Circuit Court of Appeals stated: "we will not presume that conduct was willful in the absence of evidence." *Id*. at 909. The Eleventh Circuit Court of Appeals in *Davila v. Mendez* made no determination of whether or not willfulness took place, but merely stated that it was an issue for the fact finder. 717 F.3d 1179, 1185 (11th Cir. 2013).

willfulness. On the other hand, Employees' Brief provides scant justifications to meet their burden and prove that EMD was on notice as to the FLSA and that the EMD "knew or showed reckless disregard for the matter or whether its conduct was prohibited."

First, Employees contend that Ms. Devarie "indisputably knew about the FLSA for decades."[8] EMD does not dispute that Ms. Devarie knew about the FLSA. What, EMD disputes that Ms. Devarie and/or EMD knew that the Employees did not fall within the outside salesman exemption as the District Court ultimately concluded.[9] There is no evidence in the record that any adviser or any legal authority informed her that EMD's Sales Representatives did not fall within the outside salesman exemption—which was still found to be legally insufficient in *Chao* to constitute willfulness due to the lack of specificity. In fact, the opposite is true. EMD retained experienced legal counsel to negotiate an arms-length agreement with a union that represented the Sales Representatives, including the Employees, and no one identified the commission employee arrangement with no

---

[8] It is telling that for most of Employees' Brief there is a conscious effort to downplay the level of knowledge that Ms. Devarie possessed as to the FLSA and her efforts to learn about her obligations under the FLSA, but in this section where it benefits the Employees to argue that she was knowledgeable of the FLSA they highlight her "knowledge."

[9] As more fully argued in EMD's Brief and herein, EMD still maintains that under the appropriate "preponderance of the evidence" standard that the District Court would find that EMD met its burden and find that the outside salesman exemption was applicable to the Employees.

overtime as a potential violation. As stated in *Richland Shoe*, the fact that Ms. Devarie knew "the FLSA 'was in the picture'" is insufficient because such a low threshold "virtually obliterates any distinction between willful and nonwillful violations." 486 US at 132-33. This factual evidence and legal authority support the District Court's determination that "Ms. Devarie, who was impermissibly but credibly uninformed on the topic of how the FLSA applied to her business" was not willful in her conduct. A 1608.

Second, the Employees again improperly attempt to introduce the unproven and self-serving allegation that complaints were made by Employees to EMD about overtime. As stated above, this Panel should provide no weight to this assertion because it is a disputed issue and the District Court—which was in the best position to make such a fact sensitive determination—provided no guidance as to whom it found credible on this subject. *See supra* Sec. III.D.

Third, Employees passingly mention how Merchandisers were purportedly compensated by EMD. There is no dispute that none of the Employees were Merchandisers, they were Sales Representatives. While the trial court allowed this marginally relevant evidence regarding Merchandisers, there simply is no indication as to how much weight or credibility the District Court afforded it. This Panel should disregard this irrelevant evidence.

In contrast to the meager evidence that is offered by Employees in an effort to meet their burden on willfulness, EMD has set forth in this Brief, among other things, that EMD sought guidance from two (2) accountants, engaged in arms-length negotiations with a union that represented *Employees'* interests and retained a well reputed law firm (Whiteford Taylor Preston) to represent them in the negotiations for the Sales Representatives. Hence, based on the law, the evidence set forth by EMD demonstrates more than sufficient support for the District Court's conclusion and illustrates that the District Court's ruling was not clearly erroneous.

## CONCLUSION

The District Court's judgment should be reversed, and the May 13, 2021 final judgment should be vacated, with the case remanded to the District Court for further proceedings consistent with this Panel's instructions. However, this Panel should find that the District Court did not err on its fact-based willfulness ruling.

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By:     /s/ Jeffrey M. Schwaber
        Jeffrey M. Schwaber
        Eduardo S. Garcia
        1101 Wootton Parkway, Suite 700
        Rockville, Maryland 20852
        (301) 340-2020
        jschwaber@steinsperling.com
        egarcia@steinsperling.com

*Attorneys for Appellants/Cross-Appellees*

CERTIFICATE OF COMPLIANCE
WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Jeffrey M. Schwaber, counsel for Appellant and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the attached Brief of Appellant is proportionately spaced, has a typeface of fourteen (14) points or more, and contains 7,373 words.

/s/ Jeffrey M. Schwaber
Jeffrey M. Schwaber

33